578 So.2d 487 (1991)
Tamara M. PALLAS, Appellant,
v.
UNEMPLOYMENT APPEALS COMMISSION, et al., Appellees.
No. 90-1514.
District Court of Appeal of Florida, Fifth District.
April 25, 1991.
Gayle Dauscher Clark, Melbourne, for appellant.
John D. Maher, Tallahassee, for appellee Unemployment Appeals Com'n.
DAUKSCH, Judge.
This is an appeal from an order of appellee denying unemployment compensation. We reverse.
It was found by the referee:

FINDINGS OF FACT: The claimant was employed from June 5, 1978 to February 16, 1990. Four years prior to her termination, the claimant began complaining to her supervisor and his supervisor, as well as the senior human relations representative about sexual harassment. The claimant was complaining because men coming out of the bathroom were adjusting their private parts as they came out. The claimant then began complaining of people making eye contact with her while they were doing it and doing it on purpose. The claimant told the senior human relations representative on July 5, 1987, that she was so upset over the sexual harassment that `Marie wanted to cut the testicles of the men who were harassing her.' Marie is the claimant's middle name. The employuer [sic] became concerned over the claimant's threat of violence and advised her to seek physiological [sic] counseling. The claimant had been seeing a counselor since May 1984 about depression. The claimant was told to bring all complaints of harassment directly to the supervisor or the senior human relations representative, as she was not to confront co-workers about alleged harassment. The claimant felt that seven or eight of her male co-workers were harassing her purposely with making loud noises, touching their crotch area, and whistling around her. The claimant complained to the employer about loud noises because of chronic migraines. The claimant was told by the employer she could not wear ear plugs in the kitting area for safety reasons. The claimant wore the ear plugs because people were making loud *488 noises around her. The claimant worked in a warehouse area where forklifts and machinery were operating. The claimant made continuing complaints to the human resources representative as well as several supervisors of the job about both male and female co-workers harassing her. The claimant was told during her last year of employment to be careful what she was doing with her hands because people were complaining she was shooting them the `bird'. The claimant would scratch her nose with her middle finger extended when one of the offending co-workers walked by her. The claimant also refused to respond to people who she felt were harassing her. On December 1, 1989, the claimant told a co-worker at 6:55 a.m., outside the entrance to the warehouse that she had no respect for people who touched themselves in their private areas in public and considered them to be perverts. The coworker was concerned about her attitude and what he had been told by her in view of the prior threats she had been making. The claimant did not threaten the man on December 1, 1989. The claimant was suspended for three days on December 6, 1989, while an investigation was conducted. Because of the nature of the claimant's comment and complaints, an investigation was started by the home office which lasted until February 16, 1990. The claimant was placed on paid administrative leave while the investigation was conducted. The claimant was discharged at the end of the investigation after her allegations were found to be without basis. The termination was because of her direct violation of the instructions given to her to not confront co-workers about harassment, but rather to bring her complaints to management.

DECISION: The determination of the claims adjudicator dated March 9, 1990, is hereby reversed. The claimant is disqualified for the week ended February 17, 1990, plus five weeks and until she becomes reemployed and earns $2,652. The experience rating account of the employer (0186687) is relieved of charges in connection with this claim. [Emphasis in original].
Section 443.101(1)(a), Florida Statutes (1989) provides that no benefits may be received if an employee is discharged for misconduct. "Misconduct" is defined as:
(26) MISCONDUCT.  "Misconduct" includes, but is not limited to, the following, which shall not be construed in pari materia with each other:
(a) Conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of his employee; or
(b) Carelessness or negligence of such a degree or recurrence as to manifest culpability, wrongful intent, or evil design or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.
§ 443.036(26), Fla. Stat. (1989). The statute should be liberally construed in favor of the claimant in determining whether misconduct has occurred which would disqualify the claimant from receiving unemployment benefits. § 443.031, Fla. Stat. (1989).
As has been consistently held, the actions of an employee may justify his termination, yet may not rise to the level of misconduct which would preclude him from receiving unemployment compensation benefits. General Asphalt Company, Inc. v. Harris, 563 So.2d 803 (Fla. 3d DCA 1990); Armstrong v. Unemployment Appeals Commission, 427 So.2d 357 (Fla. 5th DCA 1983). While the misconduct of appellant warrants her termination, it did not constitute "willful and wanton disregard of [the] employer's interests" so as to merit the statutory definition.
The order is reversed and this cause remanded for a proper award of benefits.
REVERSED and REMANDED.
W. SHARP, and PETERSON, JJ., concur.